Weldon, J.,
delivered tbe opinion of tbe court:
In tbe year 1881 tbe military officer and agent of tbe United States at Fort Custer, in tbe Territory of Montana, made an agreement for tbe delivery of a large quantity of bay at Fort Custer and Fort Smith, in said Territory. Tbe bay was to be cut on tbe “Crow Reservation.” Tbe original contract was with Donald Stevenson, but be having failed, a contract was made with Isaac McNutt, who employed tbe plaintiff to cut and stack bay on said reservation. After tbe making pf tbe contract with plaintiff; a disagreement took place between him and McNutt, and in tbe bringing of this suit tbe claimant al *184 leges tbat he out a large amount of hay for the defendants, for which he claims a balance of $3,049 in his request for findings. His suit is based upon the theory that he had an agreement with the United States and not with McNutt.
This case was most elaborately argued on both sides, and the court has carefully considered the testimony in order to arrive at a proper conclusion.
It is impossible to reconcile the testimony of the witnesses, they contradict each other on the vital points of the case.
Passing other matters, the findings show that the agent of the defendants notified plaintiff that he must make terms with the contractor; and that the Government must have the hay through McNutt. In a short time after that we find McNutt, and claimant accounting together as to cutting the hay. In that accounting they reached a result, to wit, $876, as the amount which should be paid by McNutt to plaintiff. That sum was paid, and by a calculation upon the theory of McNutt’s testimony it will be found that the $876 represents substantially 150 tons at $3 per ton, and 85 tons at $5 per ton, making 235 tons; which is the amount embraced in one of the vouchers given to McNutt about the time the hay cut by plaintiff was taken by McNutt to fulfill the agreement which he had with the defendants.
The'court is unable to find, from the evidence, that the claimant had any agreement with the Government as alleged by him, and do not find that the Government took and appropriated the property of the claimant to public use.
We have held in a similar case (McClure v. The United States, 19 C. Cls. R., 173) “When a person is employed to cut and stack hay on an Indian reservation at so much per ton, the place of cutting to be designated by the Government and the hay to be measured when stacked, the contract is for work and service, and not for sale and delivery. Where the Government employes a person to cut hay on an Indian reservation, the grass, though not the property of the Government, must be treated as such for the purposes of the contract.”
Whatever may have been the terms of the original agreement between McNutt and claimant, or whether the agreement was abandoned, we have found that he settled with McNutt upon the basis and theory that the contract was with him, and not with the defendants; and although claimant’s necessities com *185 pelled bim to make the settlement, he is none the less bound by it. Payments were made to McNutt after such settlement, with knowledge upon the part of the Government officers that sncli settlement had been made, and it is now too late to permit the claimant to attack the settlement to the prejudice of the United States. If it was unfair, the claimant’s right is againt McNutt and not against the defendants. They have paid a most exorbitant price for the hay, and should not be again called upon to pay claimant for the same hay. It may be a hardship upon the claimant to be restricted to the compensation paid him by McNutt; but the court must determine the rights of parties as they are shown by the facts under the law.
It is the judgment of the court that the petition be dismissed.